# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 24, 2014

## STATE OF TENNESSEE v. JOHN WESTIN MASSEY

### Appeal from the Criminal Court for Hamilton County
### No. 285856    Barry A. Steelman, Judge

### No. E2013-02305-CCA-R3-CD - Filed June 25, 2014

Pursuant to a plea agreement, the Defendant, John Westin Massey, pled guilty to vehicular homicide and to driving while under the influence ("DUI"), which was merged with the vehicular homicide.  The sentence was eight years with the trial court to determine the manner of service of his sentence.  After a sentencing hearing, the trial court ordered the Defendant to serve his sentence in the Tennessee Department of Correction.  The Defendant asserts that the sentence is excessive and that the trial court's denial of an alternative sentence was improper based upon the facts of the case.  After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J. and D. KELLY THOMAS, JR. J., joined.

Michael L. Acuff, Chattanooga, Tennessee (on appeal) and Jerry Summers, Chattanooga, Tennessee (at trial) for the appellant, John Westin Massey.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; William H. Cox, III, District Attorney General; and Kate Lavery, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION
### I. Background and Facts

This case arises out of a motor vehicle accident that resulted in the victim's death.  A Hamilton County grand jury indicted the Defendant for vehicular homicide, reckless endangerment, failure to maintain lane, and two counts of DUI.  On April 17, 2013, the

Defendant entered guilty pleas to vehicular homicide and DUI, which were merged, and the other charges were dismissed. The State offered the following recitation of the facts in support of the trial court's acceptance of the guilty plea:

> [I]n Hamilton County, Tennessee, on or about August 16th, 2012, at approximately 11:30 p.m., Hamilton County sheriff's office deputies were called to a crash in the 6500 block of Middle Valley Road.
>
> Tracy O'Neal was killed in this crash. His family and friends are here today, Your Honor.
>
> Road evidence and witness statements would show that Mr. O'Neal's vehicle was traveling in its lane heading north when the vehicle driven by the [D]efendant approached from the opposite direction and crossed two or three feet into Mr. O'Neal's lane of travel, striking Mr. O'Neal's vehicle with great force.
>
> Mr. O'Neal's vehicle sustained heavy damage to the front, the driver's side and the roof. Mr. O'Neal was wearing his seat belt, but died as a result of the injuries he sustained in the crash.
>
> In the hospital, [the Defendant] admitted to having had two large glasses of wine and having taken a sleeping pill known as Ambien. More than an hour after the crash, the [Defendant's] BAC was .12, and he had a high therapeutic dose of Ambien, otherwise known as zolpidem, in his system at .21 micrograms per milliliter, and he also had less than 0.05 micrograms per milliliter of doxylamine in his system. Doxylamine is a sedative commonly prescribed for insomnia and is an antihistamine.

Finding a factual basis for the guilty plea, the trial court accepted the Defendant's guilty plea to vehicular homicide and DUI with an agreed sentence length of eight years.

At a sentencing hearing to determine the manner of service of the Defendant's sentence, the trial court admitted into evidence the presentence report and the victim impact statements. Robert Stockburger, a Hamilton County sheriff's office deputy, testified that he was involved in the investigation of a crash that occurred on August 6, 2012, at approximately 11:37 p.m. His investigation revealed that the Defendant was traveling southbound on Middle Valley Road in a 1999 Ford F-250 when he came upon the victim, Tracy O'Neal, who was traveling northbound. The Defendant's vehicle crossed over the double yellow center line and impacted the victim's vehicle. Both vehicles rotated, and the

victim's vehicle came to a stop in a driveway while the Defendant's vehicle ended up in a ditch on the northbound side of the road. The victim was pronounced dead at the scene and transported to the forensic center. The Defendant was transported to the hospital for medical treatment where he consented to a blood test and stated that he had consumed "two very large glasses of Chardonnay" and had taken an Ambien "approximately an hour ago."

Deputy Stockburger testified that he spoke with an independent witness that was traveling on the road at the time of the crash. The witness stated that the Defendant had traveled past the center line three to five feet before impact with the victim's vehicle. Deputy Stockburger also spoke with a witness who had spoken with the Defendant by telephone at approximately 10:30 p.m. The Defendant had wanted to go to the witness's house "to drink a beer and party for about an hour." The witness told Deputy Stockburger that the Defendant "appeared fine" during this telephone call. The Defendant ended the telephone call and then called the witness again approximately ten minutes later. The witness stated that during the second phone call the Defendant exhibited difficulty "understanding directions and how to comprehend directions" to the witness's house. The witness told Deputy Stockburger that it was "apparent" to him that the Defendant was impaired; however, the Defendant denied that he had been drinking when asked. The witness was on the telephone with the Defendant at the time of the crash.

Deputy Stockburger testified that the Defendant's blood was drawn at the hospital and sent to the Tennessee Bureau of Investigation ("TBI") for analysis. The TBI report showed a .12 ethyl alcohol gram percentage and presence of doxylamine and Zolpidem in the Defendant's system. The victim's blood was also tested, and the report indicated no traces of substances in his system.

During a search of the Defendant's vehicle, an empty 187-milliliter bottle of Sutter Home white Zinfandel was found in the bed of the truck and an "almost empty" bottle of Black Heart spiced rum was found on the passenger floorboard of the Defendant's vehicle.

On cross-examination, Deputy Stockburger stated that he had no indication that the wine and rum from the empty bottles found in the Defendant's vehicle were consumed the night of the crash. He agreed that the Defendant stated he had drunk two glasses of Chardonnay rather than white Zinfandel. After reviewing his report, Deputy Stockburger testified that the Defendant called the witness at 10:23 p.m. and that the telephone call lasted thirty-three minutes and five seconds. The second phone call was placed at 11:06 p.m. and lasted thirty minutes and twelve seconds.

David Doyle, a long-time friend of the victim, asked the trial court to sentence the Defendant to the maximum allowable sentence and to deny alternative sentencing. Mr.

Doyle made this request on the basis of his belief that the Defendant showed no remorse as was evidenced by the fact that he was on probation for a criminal offense at the time of this incident.

Mark Powell, the victim's childhood friend, asked the trial court to impose the "maximum penalty" based upon the combination of alcohol, medication, and cellular telephone usage contributing to the crash.

The State then played a "montage of photos" in lieu of the widow's victim statement. The trial court admitted the DVD of the photographs into evidence.

Joyce Massey, the Defendant's mother, testified on his behalf. She spoke about the changes she had observed in her son over the past year since the crash. She described the Defendant as "very devastated"and "very remorseful." Ms. Massey said that the Defendant shared custody of his six-year-old daughter with the child's mother. She said that the Defendant "spen[t] every moment" that he could with his daughter. Ms. Massey stated that the Defendant had experienced difficulty sleeping since he was an infant, recalling two occasions before he was three months old when he stayed awake for thirty-six hours. The Defendant was prescribed Ambien, but he had expressed concerns about the way Ambien affected him.

Ms. Massey testified that at the time of this incident, the Defendant lived with her so that he could be close to his daughter and his job. She said that, if the trial court released the Defendant from custody, the Defendant could stay in her home again. She agreed that she would report any violations of the Defendant's sentence to the proper authorities because she believed "it would be in [the Defendant's] best interest." Ms. Massey confirmed that the Defendant had not driven since the trial court "took his license" when he pled guilty.

On cross-examination, Ms. Massey agreed that the Defendant began drinking at age fifteen. She agreed that she had asked the Defendant to enter a treatment program eight years earlier, when the Defendant was twenty-one, but the Defendant quit after attending briefly. Ms. Massey stated that she was unaware of any drug or alcohol treatment undertaken by the Defendant since the crash and denied any knowledge of the Defendant's marijuana use.

Kyleigh Kuschel, who had known the Defendant for five years, testified about her concerns regarding the Defendant's depression over this incident. She recalled instances were the Defendant spoke of committing suicide or "leaving away so no one had to be worried with what he's done." She suggested to the Defendant that he participate in the 1N3 program started by the mother of a "young man" killed in a drunk driving incident. According to Ms. Kuschel, the program sought to "educate people about drunk driving." The

-4-

Defendant met with someone at the program who expressed interest in the Defendant speaking about his experience at local schools.

Andrew Massey, the Defendant's uncle, testified that his relationship with the Defendant was "very strong." He said that the effect of the victim's death on the Defendant was "devastating." He described the Defendant as a "totally different person" following the incident. Mr. Massey recalled an encounter between an intoxicated patron and the Defendant that had occurred in a restaurant three weeks before. He said that the Defendant approached the person, who was initially "argumentative," shared his experience related to these offenses, and paid for the person to take a cab ride home.

The Defendant offered a statement of allocution expressing his remorse to the victim's family and friends.

After hearing the evidence, the trial court reviewed the general provisions of the Sentencing Reform Act. The trial court then considered alternative sentencing, noting that the Defendant had the burden of establishing suitability for full probation. The trial court stated that it had considered the relevant facts and circumstances, the presentence investigation, sentencing memorandum, victim impact statements, the testimony at the hearing, and the principles of sentencing. The trial court found that confinement was necessary to avoid depreciating the seriousness of the offense and ordered the Defendant to serve his sentence in confinement. *See* T.C.A. § 40-35-103(1)(B)(2010). It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant argues that the trial court erred when it denied his request for alternative sentencing. He also asserts that the trial court failed to "give appropriate weight to valid mitigating factors advanced by the [Defendant]." The State responds that the trial court imposed a sentence consistent with the purposes and principles of the Sentencing Act. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" 380 S.W.3d 682, 708 (2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise,* 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

Recently, our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). We are also to recognize that the defendant bears "the burden of showing that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2012); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2012).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them. T.C.A.§ 40-35-102(6) (emphasis added).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103.

At the sentencing hearing, the trial court sentenced the Defendant, as a Range I, standard offender, to eight years for vehicular homicide, a Class B felony. In determining the manner of service of the sentence, the trial court made the following findings:

> [T]he Court finds that the [D]efendant has had an alcohol abuse issue. He has abused alcohol for years prior to this particular incident in 2013, such that his parents recognized it and that they got him into a rehabilitation program, and for whatever reason, it didn't take and it continued. And then on this particular evening, the [D]efendant, by his own admission, . . . within a short period of time drank 32 ounces of wine and then drove an automobile [ ] [while] there was Ambien in his system. The [D]efendant had been taking Ambien for quite some time. I noticed that the [D]efendant was aware of problems with Ambien, that he had had issues perhaps with amnesia when on Ambien.
>
> . . . .

And so the [D]efendant not only drank 32 ounces of alcohol, wine, voluntarily over a short period of time, but he also ingested a prescription drug after having done that, and apparently an amount above the therapeutic, above the prescribed dosage. That's reckless.

. . . .

Not only was there an admission of drinking 32 ounces of wine, but there was also testimony that in the vehicle where the [D]efendant was was another container of wine and a bottle of rum.

There is evidence before the Court that the [D]efendant was on a cellphone, talking on a cellphone while he was driving, and perhaps attempting to use a GPS on Middle Valley Road, a two-lane highway where the [D]efendant crossed the center line as much as five feet, three to five feet, according to this eyewitness. Anything less than confinement would depreciate the seriousness of all of those circumstances.

. . . .

[T]he Court does find, under 40-35-103(C), that measures less restrictive than confinement have recently been applied unsuccessfully to the [D]efendant, and that would be the conviction from General Sessions Court related to the domestic assault. And the Court finds that that has considerable weight because it, too, was alcohol-related and was within the year of his incident at issue today.

The trial court also expressed concern about the Defendant's marijuana use since the time of this offense. Based upon its findings under Tennessee Code Annotated section 40-35-103, the trial court denied the Defendant an alternative sentence.

The record supports the trial court's findings. After consuming a large amount of alcohol and Ambien, the Defendant got behind the wheel of a car to drive to a friend's house to "party." According to the Defendant's friend, who was on the telephone with the Defendant at the time of the crash, the Defendant was clearly exhibiting signs of impairment due to the alcohol and prescription medication. While under the influence and talking on his cellular telephone, the Defendant crossed over the dividing line into the oncoming lane of traffic and hit the victim's vehicle. The victim was pronounced dead at the scene of the accident due to injuries sustained in the crash. Authorities found an empty wine bottle and an almost empty rum bottle in the Defendant's vehicle at the scene of the accident.

The trial court considered the pertinent facts of this case and appropriate sentencing principles. The trial court denied alternative sentencing based on the nature of the offense and to avoid depreciating the seriousness of the offense. The Defendant has not established that the trial court abused its discretion by denying probation.

As to the Defendant's argument that the trial court did not "give appropriate weight to valid mitigating factors," the trial court's determinations as to the weight given to the mitigating and enhancement factors is at the trial court's discretion and not a basis for reversal by this Court. *See State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the trial court properly sentenced the Defendant. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE